MORRIS GREENSTEIN *vs.* ROSE SINGER.

DECEMBER 31, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

142

CAPOTOSTO, J.   This action in trespass for trover and conversion was brought to recover moneys allegedly misappro-

priated by the defendant. A jury in the superior court returned a verdict for the plaintiff in the sum of $4,500. The defendant's motion for a new trial was thereafter heard and denied. The case is before us on her exceptions to the denial of that motion, to the refusal of the trial justice to direct a verdict in her favor, and to certain rulings on evidence.

No question of parties or pleading being raised, the ultimate issue in the case as tried is whether the defendant surreptitiously took and converted to her own use money, claimed by the plaintiff, from a safe deposit box in a certain bank in the city of Providence. The defendant, eldest of five adult children, is the daughter of plaintiff and his first wife, hereinafter sometimes called Goldie. At the time of the occurrences in question defendant was living with her parents. For reasons of their own plaintiff and his wife chose to hide substantial sums of money in his store and in their home. Whatever money plaintiff kept in the store, although the subject of considerable evidence, is not involved in this case.

Goldie died in February 1948 while on a visit in Sharon, Massachusetts, at which time $1,450 was found in her clothing. That money was turned over to plaintiff. He testified that after the funeral he and defendant, upon searching the house for money which he knew was hidden somewhere therein, discovered $4,000 secreted in an old cabinet radio. The defendant's testimony on this point was that she did not participate in any such search; that she knew nothing about the money which her father claimed to have found in the house; and that it was impossible to hide the money in the radio as described by him.

The plaintiff further testified that shortly after finding the $4,000, defendant asked him what he was going to do with that and the other $1,450 then in his possession. His answer was that he was thinking of buying a $1,000 bond for each of his five children; that she advised him to the contrary and suggested that he put the money in a safe

deposit box in a bank where "nobody knows and any time you want to get some money out, you can get it without red tape." Adopting her suggestion, he authorized her to rent such a box for him and she did so but took it in their joint names, saying to him: "I will get another key, Pa, in case you lose your key. You are a sick man."

The amount of money actually placed in the box was the subject of conflicting and irreconcilable testimony. The plaintiff testified that he had $5,000 with him when he and his daughter went to the bank; that at the bank he counted the money in her presence; and that, after defendant also had counted it for verification, the $5,000 and some jewelry, including a ring belonging to her, were placed in the safe deposit box. On the other hand defendant's testimony in substance was that only $1,450, certain jewelry of plaintiff's deceased wife and defendant's ring were placed in the box.

Between February 25, 1948 and September 26, 1949 defendant, without plaintiff's knowledge, went to the bank on five different occasions for the purpose, according to her, of taking out and returning her ring, and also to make certain withdrawals, in the total amount of $750, out of the money in the safe deposit box. She also testified that she took such sum upon the advice of a relative who said it belonged to her.

In June 1949 plaintiff married again and went to live with his second wife. Because of a disagreement with his daughter, apparently as a result of that marriage, he became concerned over the money in the safe deposit box and upon examination thereof he discovered that it contained only $500. Shortly thereafter he telephoned to defendant and asked her: "Where is the $4,500?" Her reply, as testified to by him but denied by her, was: "You don't need the money. You are a sick man and you will die and she [meaning the second wife] will get the money."

Our statement of the testimony is but a sketchy outline of a mass of conflicting evidence replete with references to

family conditions and other matters not of material importance in determining whether as against this defendant the plaintiff was entitled to possession of the money in the safe deposit box, and whether the sum of $5,000 or $1,450 was actually deposited therein. We note here that Goldie's estate was not a party in this case, as apparently no legal representative thereof was ever appointed, and on the record defendant was the only one contesting plaintiff's claim to the money in the safe deposit box.

The first material exception pressed by defendant relates to the following question and answer in plaintiff's direct examination concerning the $4,000 allegedly found by him and his daughter in his home: "Q. Whose money was it? * * * A. Mine." Relying upon the case of *Dutchburn* v. *Dutchburn,* 95 Vt. 417, defendant argues with seeming force that her objection to the question should have been sustained because it called for an opinion or conclusion on a disputed issue of fact which was for the jury and not the witness to determine. In the *Dutchburn* case a father brought an action, apparently in assumpsit, against his daughter to recover a certain sum of money. During her examination the daughter, who claimed that the money was given to her by her mother, was allowed to testify, over objection, that the money belonged to the mother. The court in holding that the ruling constituted prejudicial error expressed itself as follows: "When *ownership* is a material and ultimate fact to be determined, and is controverted at the trial, a witness should testify to the pertinent facts within his knowledge, and not give an opinion or conclusion based thereon." (italics ours)

The instant case is fundamentally different from the *Dutchburn* case. Here the plaintiff sued in trover, an action which does not necessarily require that he have an absolute and unqualified title to the subject matter of the suit. *Thomas Machine Co.* v. *Voelker,* 23 R. I. 441. Possession or the right to possession is generally held sufficient to maintain such action. Assuming that the ruling under examina-

tion was erroneous, it is our judgment upon consideration of the entire record before us, that is, the form of action, parties, pleadings and evidence, that the error was not prejudicial to this particular defendant in the peculiar circumstances of the case. The exception is overruled.

The next exception urged by defendant is to the denial of her motion for a directed verdict. The evidence, as already stated, was sharply conflicting on both of the issues hereinbefore mentioned. Our well-settled rule is that in deciding a motion for a directed verdict the trial justice cannot weigh the evidence or pass on the credibility of the witnesses but must view all the evidence most favorably to the adverse party. In the circumstances of this case, where the evidence is conflicting and subject to different reasonable inferences, the trial justice did not err in submitting to the jury for their determination in the first instance the questions of fact raised thereby. The exception is overruled.

The only other of defendant's exceptions which we need to consider is to the denial of her motion for a new trial. In passing upon this motion it was the duty of the trial justice, as repeatedly stated by this court, to pass his independent judgment on the weight of the conflicting evidence and the inferences that reasonably could be drawn therefrom. In the circumstances here the credibility of the witnesses became of prime importance in arriving at his judgment on the merits of the case. On this point he had the benefit of having observed and heard the witnesses testify. His decision shows that he did not overlook or misconceive any material evidence. Furthermore he plainly stated therein that he, like the jury, believed the plaintiff rather than the defendant. A careful examination of the record does not warrant a conclusion that he was clearly wrong in denying defendant's motion for a new trial. The exception is therefore overruled.

Other exceptions briefed or argued by defendant have been considered and found to be without merit.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

## ON REARGUMENT.

### MAY 13, 1953.

PER CURIAM. After our opinion in the above case, the defendant requested and received permission to file a motion for leave to reargue. In substance the reasons therefor appear to be that at the trial in the superior court plaintiff's attorney stated that his case involved the claim of ownership of the money in question, whereas our opinion was based on plaintiff's mere right to custody or possession, leaving in doubt whether absolute ownership of the money was decided.

There were two counts in plaintiff's declaration. Under one, based on the statute, proof of ownership was necessary, but under the other, which was in trover and conversion, proof of plaintiff's right to possession was sufficient. We determined that under the count in trover and conversion and solely as between these two parties the decision was not clearly wrong. We pointed out in our opinion that, in the absence of a representative of the deceased as a party, our determination was not based on a finding of absolute ownership in the plaintiff. For that reason, the defendant's exception and his contention respecting such ownership became immaterial.

Motion denied.

*Isidore Kirshenbaum,* for plaintiff.

*McKiernan, McElroy & Going, John S. McKiernan,* for defendant.